UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXANDER FLOYD,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PHOTON INFOTECH INC et al.,<br><br>　　　　　Defendants. | CASE NO. C24-01372-KKE<br><br>ORDER GRANTING MOTION TO STAY |

Plaintiff Alexander Floyd sues Photon InfoTech Inc. ("Photon") for violating Washington's Equal Pay and Opportunity Act (WASH. REV. CODE § 49.58.110) ("EPOA") by failing to include the wage scale or salary range in a job posting. This is one of dozens of similar EPOA cases removed to this district. Pending before the Court is Photon's motion to dismiss, Floyd's motion to remand, and Photon's motion to stay pending the Washington Supreme Court's decision on a certified question arising from one of the similar EPOA cases. Floyd opposes the motion to stay, asking the Court to rule on its motion to remand. Consistent with other decisions from this district, and because the balance of competing interests all favor staying the case, the Court grants Photon's motion to stay.

///

///

ORDER GRANTING MOTION TO STAY - 1

## I. BACKGROUND

On September 27, 2023, Floyd applied for an "AZURE Devops Engineer" position with Photon which he found through a job posting on LinkedIn. Dkt. No. 1-2 ¶¶ 25, 30. The job posting "did not disclose the wage scale or salary range being offered." *Id.* ¶ 27; *id.* at 15–18. Floyd alleges he "was qualified to perform the position for which he applied" and "expected that at some point he would learn the rate of pay for the open position," but was forced "to complete the entire application without learning the rate of pay." *Id.* ¶¶ 26, 28, 29. Floyd alleges that Photon's failure to disclose the wage scale or salary range "negatively impacts [his] current and lifetime wages," adversely affects his "ability to negotiate pay," and resulted in "lost valuable time." *Id.* ¶¶ 32–34.

On July 31, 2024, Floyd sued Photon in King County Superior Court for violating the EPOA. Dkt. No. 1-2. Floyd claims to represent more than 40 potential class members who also applied for jobs with Photon for positions that did not disclose the wage scale or salary range. *Id.* ¶ 21. Photon removed this action to this Court based on diversity jurisdiction. Dkt. No. 1 (citing 28 U.S.C. § 1332). Photon then moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) arguing Floyd failed to allege he applied for the job in good faith to gain employment. Dkt. No. 12. Floyd then moved to remand urging the Court to follow other decisions in this district that found Floyd lacked Article III standing because he failed to plead that he was a "bona fide applicant." Dkt. No. 14.

On August 20, 2024, while the parties briefed these motions, the Honorable Judge Chun certified a question to the Washington Supreme Court, asking "What must a Plaintiff prove to be deemed a 'job applicant' within the meaning of RCW 49.58.110(4)? For example, must they prove that they are a 'bona fide' applicant?" *Branson v. Washington Fine Wines & Spirits, LLC*, 2:24-CV-00589-JHC, 2024 WL 4510680, at *1 (W.D. Wash. Aug. 20, 2024). On October 11, 2024, the Supreme Court of Washington issued an Order accepting the federal certified question for

consideration. *Branson v. Washington Fine Wines & Spirits, LLC*, 557 P.3d 253 (Wash. Oct. 11, 2024). Photon now moves to stay the case and the pending motions until the Washington State Supreme Court issues its opinion in *Branson*. Dkt. No. 22. Floyd opposes this motion, arguing the Court must decide the motion to remand because the answer to the certified question is irrelevant to the Article III analysis. Dkt. No. 25. Photon replied (Dkt. No. 26), and the matter is ripe for the Court's consideration.

## II.    ANALYSIS

### A.    Legal Standard on Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The inherent power to stay includes granting a stay of the case "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). On a motion to stay, the Court considers three competing interests:

> (1) the possible damage that may result from the granting of the stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplification or complication of issues, proof, and questions of law that could be expected to result from a stay.

*Fed. Ins. Co. v. Holmes Weddle & Barcott PC*, No. C13-0926, 2014 WL 358419, at *3 (W.D. Wash. Jan. 31, 2014) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). A stay is appropriate when it will serve the interests of judicial economy by allowing for development of factual and legal issues, and when weighing of the hardships favors the granting of a stay. *See, e.g., Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

B.     **The Motion to Stay Is Granted.**

All three competing interests favor granting the motion to stay.

First, the only harm that Floyd argues would result from a stay is "delay [of] Floyd's ability to obtain relief for himself and the putative class of similarly situated individuals who were denied pay transparency in violation of Washington law." Dkt. No. 25 at 7. As Floyd admits in his opposition to the motion to dismiss, the answer to the *Branson* question "will be dispositive" of at least some aspects of the motion to dismiss. Dkt. No. 15 at 13. Accordingly, Floyd appears to agree that a stay on the merits of the case is warranted, but he would prefer to have the case remanded to state court and then stayed. Accordingly, delay in Floyd's case will occur no matter if this Court grants the motion to stay or not. No harm will result from granting the stay.

Second, denying the motion to stay may cause Photon harm. Photon argues that if the stay is denied, and the motion to remand decided, it is possible that an aspect of the forthcoming *Branson* decision could implicate the Court's remand analysis, requiring a motion for reconsideration of the remand or other such motion. Dkt. No. 22 at 3 n.1. The Court agrees. While Floyd is correct that Article III standing and state statutory standing are different, and that the Washington Supreme Court is focused on the latter, the analyses under both are undisputedly intertwined. *See Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1145 (9th Cir. 2024) (finding that an "economic injury" element of a California False Advertising Law violation is intertwined with an injury-in-fact analysis). Thus, the *Branson* decision will likely clarify the appropriate Article III analysis. *Hill v. Les Schwab Tire Centers of Wash. LLC*, No. 24-CV-425-BJR, 2024 WL 4765145, at *3 (W.D. Wash. Oct. 30, 2024) ("The definition of 'job applicant' in the EPOA will provide clarity to the meaning and intent of the statute, which informs this Court's interpretation of the procedural violation and who is harmed thereby for purposes of analyzing Article III standing."). It is further likely that the *Branson* decision will clarify the Article III

ORDER GRANTING MOTION TO STAY - 4

analysis because this district has employed a variety of tests to determine standing in similar cases. *Compare Atkinson v. Aaron's LLC*, 23-CV-1742-BJR, 2024 WL 2133358, at *9 (W.D. Wash. May 10, 2024) ("Plaintiffs must allege, at minimum, that they applied for the job with good-faith intent, and as such became personally exposed to the risk of harm caused by the violation."), *with Wright v. HP Inc.*, No. 2:24-CV-01261-MJP, 2024 WL 4678268, at *3 (W.D. Wash. Nov. 5, 2024) ("But these allegations fail to show any actual harm against which the EPOA intends to protect. Particularly, Wright does not allege that she was offered an interview or that she engaged in any pay negotiations."). Floyd argues "this Court implicitly recognized the certified question is irrelevant to its Article III standing analysis and subject matter jurisdiction analysis when it remanded two virtually identical cases after the Washington Supreme Court accepted review of the certified question." Dkt. No. 25 at 6 (citing *Wright*, 2024 WL 4678268 and *Spencer v. Jeld-Wen Inc.*, No. 23-CV-1757-BJR, 2024 WL 4566581 (W.D. Wash. Oct. 24, 2024)). Those cases are meaningfully different because neither party moved to stay the action pending the *Branson* decision. In contrast to Floyd's argument, among this cohort of EPOA cases, courts in this district have granted motions to stay pending the *Branson* decision. *See, e.g.*, *Hill*, 2024 WL 4765145.

Third, the orderly course of justice is served by staying the case pending the *Branson* decision which will clarify the EPOA requirements, potentially dispose of the motion to dismiss or the case, and likely affect the motion to remand.

In summary, all interests favor granting the motion to stay. Accordingly, the Court will stay this case and defer ruling on Floyd's motion to remand and Photon's motion to dismiss pending the Washington Supreme Court's opinion on the certified question in *Branson*.

### III.   CONCLUSION

For these reasons, the Court GRANTS Defendant's motion to stay. Dkt. No. 22. The Court TERMINATES the pending motions (Dkt. Nos. 12, 14). The parties shall file a joint status report

no later than 14 days after the Washington Supreme Court issues a final decision on the certified question in *Branson*. In the joint status report, counsel may request to reinstate the motion to dismiss or motion to remand as appropriate.

Dated this 10th day of December, 2024.

*Kymberly K. Evanson*
Kymberly K. Evanson
United States District Judge